Case 3:25-mj-00929-RMS   Document 1-1   Filed 09/29/25   Page 1 of 9

United States District Court
District of Connecticut
FILED AT NEW HAVEN
9/29 ,20 25
By  N. Langello
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF A CRIMINAL COMPLAINT AND ARREST WARRANT FOR JULIAN FOSTER | NO. 3:25-MJ- 929 (RMS)<br><br>**Filed Under Seal** |

I, Christopher L. Rettig, being duly sworn, depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18. I have been employed by ATF as a Special Agent since November of 2017. I graduated from Northeastern University, Magna Cum Laude in May 2015 with my Bachelor of Science Degree in Criminal Justice. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program, both of which are conducted at the Federal Law Enforcement Training Center in Glynn County, Georgia. I have received specialized training in firearms identification and the investigation of firearms-related offenses. I have participated in investigations involving the unlawful possession of firearms by prohibited persons, including persons who are previously convicted felons; the possession of firearms in furtherance of the distribution of narcotics; and the use of firearms in the commission of violent acts. I have provided testimony in Grand Jury and in United States District Court proceedings and spoken with informants and subjects, as well as local and federal law enforcement officers, regarding the manner in which individuals obtain, finance, store, manufacture, transport, and

1

distribute their illegal firearms and narcotics. I have received training, both formal and on-the-job, in the provisions of the federal firearms and narcotics laws administered under Titles 18, 21 and 26 of the United States Code.

2.      I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit.  The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by Special Agents/Task Force Officers of the ATF and Officers from the Huntsville Police Department, (3) my experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part.  This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.  This affidavit further includes only those facts which relate to the need for, and propriety of, the requested authorizations.  This affidavit does not purport to set forth all of the facts gathered during the course of the investigation of this matter.

3.      I am currently investigating Julian FOSTER (DOB: xx/xx/1990) (known to me) for illegal firearms trafficking and possession.  This affidavit is made in support of an arrest warrant and a criminal complaint for FOSTER for violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm).

4.      For the reasons set forth herein, I respectfully submit that there is probable cause to believe, and I do believe, that FOSTER committed the TARGET OFFENSE.  Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested

criminal complaint and arrest warrant, it does not include all information gathered to date by the ATF and other law enforcement entities in relation to this investigation.

## PROBABLE CAUSE

5. The ATF New Haven Field Office initiated an investigation into FOSTER regarding suspected commission of the TARGET OFFENSES. A criminal history query revealed that FOSTER is a previously convicted felon, including felony convictions for Robbery 1st Degree – Firearm Threat and Sale of a Controlled Substance. As set forth below, the investigation to date has revealed that FOSTER has and continues to illegally possess and traffic firearms.

6. In June 2025, an undercover ATF Agent ("UCA") began communicating with FOSTER.

*Communications with FOSTER and Travel to Texas*

7. In July 2025, FOSTER advised the UCA that he had a source in Texas where he was able to acquire firearms, and that he intended to travel there shortly. On July 13, 2025, FOSTER informed the UCA that he had to postpone his trip, by which the UCA understood FOSTER to be referencing the trip to Texas to acquire firearms. The following day, the UCA conducted a recorded telephone call during which FOSTER explained that he had been unable to travel to Texas due to a probation appointment. FOSTER stated that he was going to "finesse next month," which the UCA understood to mean that FOSTER intended to travel to Texas the following month (August 2025) to obtain firearms as he had discussed previously.

8. On August 26, 2025, FOSTER informed the UCA, "Im in TX I'll be back next week thinkin like tue or wed." On August 26 and 27, 2025, FOSTER sent the UCA two images of firearms, which FOSTER provided prices for.

9. On August 29, 2025, the UCA conducted a recorded Facetime call to FOSTER. As part of the call, FOSTER stated, in substance, that he had obtained a rental vehicle, described by FOSTER as a 2026 BMW, and planned to utilize the vehicle to transport firearms back. Investigators believe FOSTER was referring to bringing the firearms back to Connecticut from Texas. FOSTER informed the UCA that he (FOSTER) planned to transport approximately 4 firearms back with him.

10. On August 29, 2025, FOSTER utilizing telephone number (475) 231-7064, sent two (2) images of firearms to the UCA and messaged the UCA, "This ain't even the half bro I got sum shit in my storage." Investigators believe that FOSTER was advising the UCA that he has additional firearms as well. The images of the firearms sent to the UCA appear below:



11. On August 30, 2025, ATF contacted the Arkansas State Police ("ASP") in an attempt to conduct a motor vehicle stop of FOSTER. Ultimately, Troopers with ASP located FOSTER and conducted a motor vehicle stop. According to the Troopers, FOSTER was driving a white BMW small sized SUV, bearing Texas registration: XCR9797. ASP also identified Lateecha GORDON (YOB: xx/xx/1988) (known to me) as a passenger of the vehicle FOSTER

was driving. FOSTER consented to a search of his luggage, which yielded no contraband, however, FOSTER did not consent to a search of the vehicle. Ultimately, FOSTER was released from the motor vehicle stop.

12. At approximately 5:00 AM on August 31, 2025, the UCA received the following messages from FOSTER:

| Date | Time | Number | Type | Direction | SMS Delivery Status | Content |
|---|---|---|---|---|---|---|
| 2025/08/31 | 05:00:40 AM EDT | 475-231-7064 | SMS | Incoming | | Top: KSG<br>Mid: sig 15\| mag hold 50<br>Bottom: 9m |
| 2025/08/31 | 05:00:47 AM EDT | 475-231-7064 | MMS | Incoming | | [image of firearms] |
| 2025/08/31 | 05:13:43 AM EDT | 475-231-7064 | SMS | Incoming | | 6 all 3 |
| 2025/08/31 | 05:15:40 AM EDT | 475-231-7064 | MMS | Incoming | | VIDEO |

13. Based on the above text messages, investigators believe that FOSTER was advertising the above pictured three (3) firearms for sale to the UCA and asking for $6,000 for the purchase of all of them.

14. On September 1, 2025, the UCA again communicated with FOSTER. The UCA informed FOSTER that the UCA would be available for the transaction on Wednesday (September 3), which FOSTER acknowledged. Following, FOSTER stated he wanted to conduct a Facetime with the UCA to discuss how he (FOSTER) wanted to conduct the exchange. On the same date, the UCA placed an outgoing Facetime call to FOSTER. In substance, FOSTER

stated he did not want to conduct a hand-to-hand exchange with the firearms as he wanted to avoid law enforcement detection.

*September 3, 2025 Controlled Purchase of Three (3) Firearms*

15. On September 3, 2025, ATF coordinated and conducted a transaction for three firearms between the UCA and FOSTER. Leading up to the transaction, the UCA conducted recorded telephonic communications with FOSTER over three separate telephones, which included the calls on August 29 and September 1 summarized above. Ultimately, the UCA met with FOSTER in an apartment complex in New Haven. After a short interaction, FOSTER directed the UCA to follow him, as FOSTER indicated the firearms were elsewhere.

16. The UCA followed FOSTER to the outside of a residence in New Haven, Connecticut, where FOSTER provided the UCA with three firearms, which were zip-tied together and concealed within a trash bag and suitcase. In exchange, the UCA provided FOSTER with $6,000 in ATF Agent Cashier Funds. During the transaction, FOSTER indicated to the UCA that FOSTER intended to acquire multiple pistols, which he would in return sell to the UCA. The transaction was audio and video recorded. The firearms were subsequently identified as the following: one (1) SCCY, Model: CPX-2, 9mm caliber pistol, S/N: 733144, one (1) KELTEC, Model: KSG, 12 gauge shotgun, S/N: XYGG12, and one (1) SIG SAUER, Model: SIG M400, 5.56 caliber rifle, S/N: 20C023267. A photograph of the three (3) purchased firearms appears below:



*Huntsville, Texas Police Department Arrest*

17. On or about September 11, 2025, FOSTER was arrested by the Huntsville, Texas Police Department for Unlawful Possession of a Firearm by a Convicted Felon and GORDON was arrested for state charges involving possession of drug paraphernalia. According to a report prepared by the Huntsville Police Department, on September 11, 2025, at approximately 11:19 PM, officers observed multiple motor vehicle violations committed by a grey Porsche Macan bearing Connecticut Registration BS12177. Officers conducted a traffic stop and identified FOSTER and GORDON inside the vehicle. After a K-9 alerted to the vehicle, officers searched the vehicle and ultimately located three firearms concealed within the engine bay of the vehicle.

*Continued Communications Following the Arrest*

18. On September 19, 2025, the UCA was contacted by FOSTER on a Houston-based area code telephone number. The UCA and FOSTER have since communicated regarding

FOSTER's ability to sell the UCA two additional firearms. Within the communications, FOSTER provided the UCA with a picture of the two firearms as well as a video of a drop-in auto sear, or a machine gun conversion device (MCD) that equips to a firearm, allowing the firearm to shoot at a fully automatic rate. FOSTER provided the UCA with prices for the two firearms and MCD. Ultimately, the UCA and FOSTER agreed to meet to conduct the transaction during the week of September 29, 2025.

## FLS Query

19. ATF conducted a query of FOSTER with his corresponding date of birth (xx/xx/1990) (known to me) in the ATF Federal Licensing System (FLS) database. This query revealed that FOSTER does not hold a Federal Firearms License (FFL).

## Criminal History

20. Investigators have reviewed criminal history records for FOSTER which revealed that he is a convicted felon. According to criminal history records, FOSTER has been convicted of the following:

   a. On or about November 8, 2016, FOSTER was convicted of Robbery 1st Degree – Firearm Threat, a felony, in violation of Connecticut General Statutes § 53a-134(a) (4) and was sentenced to twelve (12) years jail, ninety (90) months suspended, and three (3) years of probation. FOSTER was also convicted of Failure to Appear 1st Degree, a felony, in violation of Connecticut General Statutes § 53a-172 and was sentenced to eighteen (18) months jail, concurrent with other case(s).

   b. On or about May 20, 2013, FOSTER was convicted of Sale of a Controlled Substance, a felony, in violation of Connecticut General Statutes § 21a-277(b)

and was sentenced to five (5) years jail, six (6) months suspended, and thirty (30) months of probation.

### State of Connecticut Probation Information

21. Over the course of the investigation, ATF New Haven Field Office received information from the State of Connecticut Probation Office regarding FOSTER. ATF was advised that FOSTER is currently on state probation for a Robbery 1st offense.

### Interstate Nexus

22. During the course of the investigation, ATF SA Oppenheim, an Interstate Nexus expert, examined the three (3) firearms which were purchased in Connecticut by the UCA on September 3, 2025. It is the opinion of SA Oppenheim that the firearms were manufactured outside of the State of Connecticut.

### CONCLUSION

23. Based on the above, there is probable cause to believe, and I do believe that FOSTER violated Title 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm) and I am requesting a criminal complaint and arrest warrant to be issued on this basis.

CHRISTOPHER RETTIG
Digitally signed by CHRISTOPHER RETTIG
Date: 2025.09.29 11:35:42 -04'00'

Christopher L. Rettig
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

The truth of the foregoing affidavit has been attested to me by Special Agent Christopher Rettig over the telephone on this the 29 th day of September, 2025.

Robert M Spector
Digitally signed by Robert M Spector
Date: 2025.09.29 13:59:00 -04'00'

HON. ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE